## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SOUTHERN WINE & SPIRITS OF AMERICA, INC., a Florida Corporation; SOUTHERN WINE & SPIRITS OF NEBRASKA, INC., a Florida Corporation; HARVEY R. CHAPLIN; WAYNE E. CHAPLIN; and STEVEN R. BECKER, | ) ) ) ) ) ) ) ) | Case No. 4:07CV3244 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **MEMORANDUM** |
| DAVID HEINEMAN, in his official capacity as Governor of the State of Nebraska; JON BRUNING, in his official capacity as Attorney General of the State of Nebraska; NEBRASKA LIQUOR CONTROL COMMISSION; and ROBERT LOGSDON, PAT THOMAS, and RHONDA FLOWER, in their official capacities as members of the NEBRASKA LIQUOR CONTROL COMMISSION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **AND ORDER** |
| Defendants. | ) | |

The plaintiffs sued Nebraska officials and the Liquor Control Commission contending that a recent license law passed by the legislature is unconstitutional. After initially defending the law, the defendants reconsidered and now formally concede that a portion of the new law, the "Grandfather Clause," is unconstitutional. Consequently, the focal point of the fight has shifted. As I see it, the sole remaining dispute is whether I can sever the offending clause from the remainder of the legislation. If severance is not possible, the plaintiffs win and there is no reason to consider the other grounds for their suit.

Because I agree with the plaintiffs that the "Grandfather Clause" induced passage of the entirety of the challenged legislation, the offending portion of the law is not severable from the portion that may be unobjectionable.[1]  As a result, I will grant the plaintiffs' motion for partial summary judgment, deny the defendants' cross-motion and I will enjoin enforcement of the entirety of the statute.  I will also dismiss the other grounds for relief advanced by the plaintiffs because I should avoid unnecessary adjudications (constitutional or otherwise).  My reasons for this decision are set forth below.

## I. BACKGROUND

Cross-motions for summary judgment frequently signal that both sides agree on one thing and that is, there is no reason for a trial.  While there is some slight disagreement on insignificant matters, I believe the parties agree that there are no *material* facts that are *genuinely* disputed.[2]  Taken primarily from the parties'

---

[1]To be clear, I express no opinion on whether the remaining portion of the law is actually unobjectionable.

[2]*Compare* the defendants' statement of material facts, filing 32 at CM/ECF pages 3-5 (paragraphs 1-15) *with* the plaintiffs' response to defendants' statement of material facts, filing 41 at CM/ECF pages 3-4 (admitting paragraphs 1-14 and contending that paragraph 15 is a legal conclusion); *compare* the plaintiffs' statement of additional material facts, filing 41 at CM/ECF pages 4-7 (paragraphs 16-32) *with* the defendants' response to the plaintiffs' statement of additional material facts, filing 50 at CM/ECF pages 2-3 (admitting paragraphs 16-30 and paragraph 32, except for "characterizations," and stating that the defendants have insufficient knowledge to dispute or admit paragraph 31); *compare* the defendants' statement of additional material facts, filing 50 at CM/ECF page 3 (paragraphs 33 and 34) *with* the plaintiffs' response to defendants' statement of additional material facts, filing 56 at CM/ECF page 9 (stating that paragraph 33 is a legal conclusion for which no response is required and admitting that paragraph 34 reflects a legal interpretation, but observing that the plaintiffs think the opinion is wrong).

admissions of each other's statement of facts, as supplemented by my independent review of the summary judgment record,[3] and greatly simplified for clarity, I find the following to be the critical undisputed facts.[4]

1.      Plaintiff Southern Wine & Spirits of America, Inc. ("Southern") is a Florida corporation authorized to do business in Nebraska.  Plaintiff Southern Wine & Spirits of Nebraska ("Southern Nebraska"), a Florida corporation, is a wholly-owned subsidiary of Southern.  Plaintiffs Harvey R. Chaplin, Wayne E. Chaplin, and Steven R. Becker are shareholders and directors or officers of Southern and are residents of Florida.  They are also directors of Southern Nebraska.  (*Compare* filing 1 ¶¶ 1-5 (complaint) *with* filing 46 ¶¶ 1-5 (answer) and *with* filing 32 ¶¶ 1-4 (defendants' statement of material facts).)

2.      The caption and the complaint accurately describe the defendants' official functions and each of the defendants have some authority to enforce the provisions of Nebraska's liquor laws.  (*Compare* filing 1 ¶¶ 6-10 *with* filing 46 ¶¶ 6-10.)

3.      Prior to 1987, the Nebraska Liquor Control Commission ("Commission") issued Southern (the parent corporation) a Class S license, which pursuant to Neb. Rev. Stat. § 53-123.15(2), may only be issued to a "manufacturer."

---

[3]The defendants' index of evidence may be found at filing 33.  The plaintiffs' index of evidence may be found at filing 42.  The defendants' supplemental index of evidence may be found at filing 51.

[4]The able lawyers wage a mini-war over the admissibility of two affidavits. The plaintiffs want me to strike an affidavit submitted by the Executive Director of the Nebraska Liquor Control Commission.  (Filing 39.)  The defendants move to strike an affidavit submitted by Steven R. Becker, one of the plaintiffs.  (Filing 52.) Because it does not matter, I deny both motions.  That is, no *fact* in the challenged portions of the affidavits are material to my decision.

(*Compare* filing 32 ¶ 4 *with* filing 41 ¶ 16 (plaintiffs' statement of material facts) and *with* filing 50 ¶ 16 (defendants' response to additional material facts).)   Southern sometimes operates under the trade name Shaw Ross International Importers and was thus treated by Nebraska as a "manufacturer" because it imported alcohol into the United States manufactured by others outside of the United States.  (*Compare* filing 41 ¶ 16 *with* filing 50 ¶ 16.)

4.    On November 22, 2006, Southern Nebraska (the subsidiary) submitted its Class X liquor license application to the Commission, which was accepted for consideration on January 24, 2007.   (*Compare* filing 32 ¶ 5 *with* filing 41 ¶ 5.)

5.    Prior to September 1, 2007, Neb. Rev. Stat. § 53-169.01 provided that:

> No manufacturer of alcoholic liquor holding a manufacturer's license under section 53-123.01 and no manufacturer of alcoholic liquor outside this state manufacturing alcoholic liquor, except beer, **for distribution and sale within this state** shall, directly or indirectly, . . . be interested in the ownership conduct, operation, or management of any alcoholic liquor wholesaler holding an alcoholic liquor wholesale license, except beer, under section 53-123.02.

Neb. Rev. Stat. § 53-169.01 (Reissue 2004) (Emphasis added).[5]

_____

[5]The "old" law apparently allowed manufacturers to hold interests in Nebraska wholesalers if the alcohol they manufactured (imported) was not sold in Nebraska. The evident purpose of the law was to prohibit vertical integration of manufacturers and wholesalers in the Nebraska market. Thus, even though Southern was a "manufacturer" due to the fact it imported certain alcoholic beverages into the United States, it could own an interest in a Nebraska wholesaler (Southern Nebraska) so long as it did not ship alcohol to Nebraska.

6.     In the spring of 2007, the Nebraska Legislature amended Neb. Rev. Stat. § 53-169.01 to strike and add the following language:

> No manufacturer of alcoholic liquor holding a manufacturer's license under section 53-123.01 and no manufacturer of alcoholic liquor outside this state manufacturing alcoholic liquor, except beer, ~~for distribution and sale within this state~~ [6] shall, directly or indirectly, . . . be interested in the ownership, conduct, operation, or management of any alcoholic liquor wholesaler holding an alcoholic liquor wholesaler license, except beer, under section 53-123.02 **unless such interest in the licensed wholesaler was acquired or became effective prior to January 1, 2007.**

LB 578 (2007), available at Westlaw NE LEGIS 578 (2007). (Amendments shown by "strikeout" and "bold" font).

7.     Senator Vickie McDonald was the only sponsor of the legislation. During her May 9, 2007 address to the Nebraska Legislature, Senator McDonald described the intent of her amendment (known as AM 892). In pertinent part, she stated:

> The point is to stop manufacturers from setting up as wholesalers in Nebraska and aggressively pushing their own products. *The intent is not to affect current license holders*. . . . In this section, by deleting the words "for distribution and sale within the state," it clarifies that a manufacturer outside Nebraska may not wholesale in Nebraska at all. Under the current language, such manufacturer may wholesale in

_____

[6]By striking "for distribution and sale within this state," the law was changed to prohibit a manufacture from holding an interest in a Nebraska wholesaler whether or not the manufacturer's product was sold in Nebraska. Thus, even though Southern might not ship into Nebraska the alcohol it imported, the effect of the amendment was to prohibit Southern Nebraska from acting as a wholesaler in Nebraska because its parent corporation, Southern, was a "manufacturer" (importer) of alcohol.

-5-

Nebraska if it doesn't manufacture what it distributes here. We want to make it clear that if you are a manufacturer you may not wholesale in Nebraska. Since we are making this clarification and with the growth of consolidated shipping house, we decided to put an effective date that would *preserve the licenses of those that . . . have already obtained a license* and make it clear that this is the law now and *there's no opportunity for an applicant*[7] who is interested in dabbling in both areas to do so. Thank you.

(Filing 33-2 at CM/ECF pages 18-19.) (Emphasis added.) No other significant discussion took place and the amendment was adopted without debate. (*Compare* filing 41 ¶¶ 18, 20, 22 *with* filing 50 ¶¶ 18, 20, 22.) On May 18, 2007, the law was formally enacted by the legislature, the Governor subsequently signed the law, and it became effective September 1, 2007. (*Compare* filing 41 ¶¶ 24-26 *with* filing 50 ¶¶ 24-26.) There is no other material legislative history. The amendment did not contain a severability clause.

8.     The Commission issued Southern Nebraska (the subsidiary) an "Order to Show Cause" why the application for a Class X wholesale license should be approved in light of the potential violation of Neb. Rev. Stat. 53-169.01 caused by Southern's (the parent corporation's) possession of a Class S license. (*Compare* filing 32 ¶ 8 *with* filing 41 ¶ 8.) The Commission held a hearing on the matter on May 22, 2007. (*Id.*)

9.     On July 20, 2007, the Commission approved the application of Southern Nebraska (the subsidiary) for a Class X license, subject to several conditions including the surrender of Southern's (the parent corporation's) Class S license. (*Compare* filing 32 ¶ 9 *with* filing 41 ¶ 9.)

_____

[7]At the time this statement was made by Senator McDonald, Southern Nebraska was an "applicant" for a Class X license and Southern held a Class S license. I doubt that the timing of Senator McDonald's actions were coincidental.

10.    The Commission's approval noted that Southern Nebraska's (the subsidiary's) Class X wholesale license could be subject to review when LB 578 became effective.   (*Compare* filing 32 ¶ 10 *with* filing 41 ¶ 10.)

11.    On August 22, 2007, after the conditions had been met, the Commission issued Southern Nebraska (the subsidiary) a wholesale, or Class X, liquor license pursuant to Neb. Rev. Stat. § 53-169.01.  (*Compare* filing 32 ¶ 11 *with* filing 41 ¶ 11.)

12.    Southern Nebraska (the subsidiary) currently possesses a valid Class X license permitting it to operate as a liquor wholesaler in the State of Nebraska. (*Compare* filing 32 ¶ 12 *with* filing 41 ¶ 12.)

13.    On or about October 4, 2007, the Commission ordered a show cause hearing, pursuant to Neb. Rev. Stat. § 53-1,104, regarding whether Southern Nebraska (the subsidiary) is currently in compliance with Neb. Rev. Stat. § 53-169.01 as amended by LB 578.  (*Compare* filing 32 ¶ 13 *with* filing 41 ¶ 13.)  Under the law as amended, the Commission threatens to revoke Southern Nebraska's (the subsidiary's) Class X license because it is owned by Southern (the parent). [8]

14.    On October 8, 2007, the plaintiffs sued the defendants.  They sought injunctive and declaratory relief and attorney fees but not damages. In their complaint, the plaintiffs alleged, among many other things, the following:

    A.    Federal question jurisdiction was asserted and the action was commenced pursuant to 42 U.S.C. § 1983 to address violations of

---

[8]The revocation of the Class X license would occur because Southern, the parent corporation of Southern Nebraska, is an importer and thus considered by Nebraska to be a "manufacturer" even though it has now surrendered its Class S license to ship alcohol into Nebraska.

the plaintiffs' rights to engage in interstate commerce.  (Filing 1 ¶ 11.)

B.     The "Grandfather Clause" was added to the legislation at the request of the Nebraska Wholesale Liquor Distributors Association which is composed of three liquor wholesalers holding Class X licenses issued prior to January 1, 2007.  (Filing 1 ¶ 36.)

C.     In Count Two, it was claimed that the Nebraska law, as amended by LB 578, was unconstitutional in that the "Grandfather Clause" violated the Equal Protection Clause of the Constitution because, among other things, the two classes established by the clause bear no rational relationship to any legitimate government interest and because the clause arbitrarily discriminates against those parties that did not have an interest in a wholesaler prior to January 1, 2007. (Filing 1 ¶¶ 79, 80.)

D.     In Count Four, it was claimed that the Nebraska law, as amended by LB 578, was unconstitutional in that the "Grandfather Clause" violated the Privileges and Immunities Clause of the Constitution[9] because, among other things, it practically precluded out-of-state residents from falling within the exception and because it

_____

[9]Amendment XIV, Section 1, Clause 2 of the United States Constitution is frequently known as the Privileges or Immunities Clause.  It provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ."   Amendment IV, Section 2, Clause 1 of the Constitution also provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

-8-

effectively granted privileges to Nebraska residents that are not available to out-of-state residents.  (Filing 1 ¶¶ 96, 98.)

15.   Because of the pending "show cause" hearing before the Commission, the plaintiffs sought and were granted a temporary restraining order that was allowed to remain in effect pending final resolution of this case.  At the hearing on the temporary restraining order on October 16, 2007, the Executive Director of the Commission spoke.  Among other things, he stated that Neb. Rev. Stat. § 53-169.01 "goes to ownership and operation, not agency."  (Filing 42-4 at CM/ECF page 27.) In that regard, he stated:

> THE COURT:  Now, hold it, though, before you go back.  So if Finochiaro's[10] now got a Class X license that is grandfathered, there is nothing in Nebraska law that prohibits Finochiaro from going out and becoming an agent of a manufacturer, right?
>
> EXECUTIVE DIRECTOR:  I think there would be, because the interest had to be acquired prior to January 1st, 2007.
>
> THE COURT: No, no, no.  We aren't talking about – we aren't talking about the Class X license.  They're not going to change – they're not going to change their Class X license, they're simply going to go out and associate with a manufacturer.  There's nothing to preclude them in the statute from doing that; isn't that right?
>
> EXECUTIVE DIRECTOR: I believe you are correct, sir.

---

[10]According to the Executive Director, this company is one of the "grandfathered" Nebraska wholesalers.  Incidentally, I believe the correct spelling is "Finocchiaro."  *See* the reference to "Finocchiaro Wine Co." in Omaha, Nebraska at *Goliath Business Knowledge on Demand*, available at http://goliath.ecnext.com/ (under Company Profiles).

-9-

(Filing 42-4 at CM/ECF page 25.)  (Partial transcript prepared by Plaintiffs.)  The Executive Director also confirmed that prior to the adoption of the amendment he was consulted by an aide to Senator McDonald.  The consultation dealt with that part of the amendment striking the words "for distribution and sale within this state."  But the Executive Director stated that he was not consulted about the "Grandfather Clause."  (Filing 42-4 at CM/ECF page 28.)  He did not know why the "Grandfather Clause" was used.

16.    In an answer filed on December 21, 2007, the defendants "conceded" that "the Grandfather Clause is unconstitutional either under the Equal Protection Clause or Privileges and Immunities Clause of the United States Constitution . . . ." (Filing 46 ¶¶ 78-83 and ¶¶ 92-101.)  The defendants have never stated the reason or reasons for their concession.  However, at the hearing on the application for a temporary restraining order, the Executive Director of the Commission, a former Assistant Nebraska Attorney General, candidly estimated that 90 percent of the current market was controlled by Class X liquor license holders who had received their licenses prior to January 1, 2007 *and* who were domiciled in Nebraska.[11]  (Filing 17 (digital audio file, beginning at 5:22 (as measured by a timing device in Windows Media Player)).[12]  Furthermore, the Executive Director also stated that several of these "grandfathered" Class X license holders had relationships of some type with large manufacturers, although he did not believe that those were prohibited relationships.  (Filing 17 (digital audio file, beginning at 36:32) stating that "Finocchiaro's biggest account is Gallo Wines.")

_____

[11]I take judicial notice of all statements made by the Executive Director at the hearing on the motion for a temporary restraining order.

[12]Parenthetically, I am currently part of a pilot project in the federal courts testing the utility of digital audio recordings.

17.    The answer, including the concession of unconstitutionality, has never been withdrawn.

18.    On January 2, 2008, the defendants submitted an affidavit of the Executive Director.  (Filing 51-3, supplemental Ex. 1-A.)  In that affidavit, the Executive Director stated that he "misspoke" when he answered "I believe you are correct, sir" regarding whether there was anything in the amended statute precluding a "grandfathered" Class X license holder from associating with a manufacturer after January 1, 2007.  (*Id.* at CM/ECF page 2 ¶ 4.)   The Executive Director did not explain why he "misspoke."  Notwithstanding this affidavit, the defendants did not withdraw their concession of unconstitutionality.  In fact, on January 2, 2008,  the defendants filed a reply brief admitting, again, that "Defendants concede that the 'Grandfather Clause' in AM 892 to LB 578 is unconstitutional . . . ."  (Filing 50 at CM/ECF page 4.)

19.    Based upon the defendants' concession of unconstitutionality, and the record more generally, the "Grandfather Clause" was enacted with a discriminatory purpose.

20.    Based upon the defendants' concession of unconstitutionality, and the record more generally, the "Grandfather Clause" has a discriminatory effect.

## II.  ANALYSIS

The Nebraska law is unconstitutional and the defendants have clearly and repeatedly made judicial admissions to that effect.  Among other things, the plaintiffs asserted that the law is unconstitutional because the "Grandfather Clause" violated the Equal Protection and Privileges and Immunities provisions of the Constitution and the defendants have repeatedly and formally agreed that such an assertion is true.  The

-11-

only question that remains is whether the admittedly unconstitutional portion of the law is severable from the portion that may not be unconstitutional.

I find and conclude that severance is inappropriate. The law must be enjoined in its entirety. I next explain why that is so.

### A.   *The Defendants Must Suffer the Consequences of Their Admirable Candor.*

The defendants argue that the "Grandfather Clause" was not important to passage of the legislation and so I should sever that unimportant portion from the other portion. They assert that "no current license holders were impacted by the Clause" and therefore "it is illogical to argue that LB 578 would not have been adopted without the Grandfather Clause." (Filing 32 at CM/ECF page 11.) In essence, the defendants argue that the "Grandfather Clause" did not *actually* protect prior license holders even though it was plainly meant to do so because no license holder would have been in violation of the law if anybody had taken a hard look at the situation. Thus, because the "Grandfather Clause" has been determined to be unnecessary (after the fact), I should sever it. I reject this inventive, but ultimately inconsistent, argument.

First, and most importantly, the argument–the "Grandfather Clause" is unnecessary to protect existing license holders–directly contradicts the judicial admission that the "Grandfather Clause" violates two parts of the Constitution. If the "Grandfather Clause" was not enacted with the purpose and intent of actually protecting a class of Nebraska license holders to the detriment of the Florida plaintiffs in violation the Equal Protection and Privileges and Immunities clauses of the Constitution, why does Nebraska now concede that the "Grandfather Clause" is unconstitutional?

-12-

More colloquially, if there was no harm, why does Nebraska admit that there was a foul?  The defendants offer no explanation for that simple question, and so I shall supply one.  The law has both a discriminatory purpose and a discriminatory effect and that is why this *particular* "Grandfather Clause" is unconstitutional.[13]

I do not fault the defendants, or their able lawyers, for making the concession of unconstitutionality.  The apparent motivation for, and evident consequence of, the "Grandfather Clause"–protecting Nebraska businessmen to the detriment of businessmen from other states–would have been very difficult to defend.  *See, e.g., Jones v. Gale*, 470 F.3d 1261, 1267 (8th Cir. 2006) (Owners of farms or ranches brought an action challenging the constitutionality of a Nebraska constitutional amendment prohibiting farming or ranching by corporations and syndicates.  The United States District Court for the District of Nebraska granted summary judgment in favor of the owners and refused severance.  The Eighth Circuit Court of Appeals affirmed and stated that a "law 'overtly discriminates' against interstate commerce if it is discriminatory on its face, if it has a discriminatory purpose, or if it has a discriminatory effect." ) (citations omitted), *cert. denied*, 127 S. Ct. 1912 (2007).  While the defendants' candor is worthy of praise, it is not an excuse for wiggling out of the consequences of their concession.

Second, the assertion that the "Grandfather Clause" is unimportant because no Nebraska license holder would actually be in violation of the law anyway is based upon an "after the fact" analysis by the Executive Director of the Commission.  Essentially, he states that following the passage of the law, he looked at his records and concluded that no existing license holder could be in trouble.  Setting to one side the speculative nature of that assertion, and also setting aside the self-serving nature

---

[13]To be crystal clear, there is nothing wrong with "grandfather clauses" in the abstract.

-13-

of that analysis, as I shall next demonstrate, the "Grandfather Clause" has real value to Nebraska businesses even if I assume that the Director is correct.

Whether or not Nebraska wholesalers really have anything to worry about, the law gives them a 100% guarantee against being pursued by the regulators for violations of the amended law if they obtained their license prior to 2007. Giving "insurance" to the "home team"–even if it turns out that the "home team" does not need it– strikes me as something Nebraska legislators would be keen on doing. Thus, even if I assume (which I do not) that the "Grandfather Clause" is objectively unnecessary to protect the "home team," that does not mean Nebraska legislators realized that their handiwork was meaningless. For purposes of severance analysis, I think it far safer to assume that the Nebraska legislators passed the law with the "Grandfather Clause" as a critical part of that law because those politicians preferred to "be safe rather than sorry." It strains credulity to assume that Nebraska legislators would have passed the challenged law without the "Grandfather Clause" on the *assumption* that their Nebraska constituents would never have anything to worry about.[14] Frankly put, that is no way to get reelected.

It is also worth remembering that an aide to the sole sponsor of the legislation consulted the Executive Director about the substance of the amendment before it was passed, but the aide did not consult the Director about the "Grandfather Clause." The Executive Director had no idea why the "Grandfather Clause" was added. These twin facts strongly suggest that the "Grandfather Clause" was a fait accompli generated by a politician's desire to protect insular interests rather than being driven by an innocent but innocuous policy rationale. That being the case, it is hard to believe that the "Grandfather Clause" was inconsequential to the passage of the legislation.

---

[14]After all, what is to stop the Executive Director from changing his mind at some future date when some other litigant brings suit for not enforcing the law against Nebraska wholesalers who got their licenses prior to 2007? The answer, of course, is nothing, *unless* the "Grandfather Clause" is part of the law.

-14-

In sum, I reject the assertion that the unconstitutional "Grandfather Clause" was an unimportant part of the legislation that may be severed because the Executive Director *now* believes that no Nebraska beneficiary of that clause really needs it.   In addition to being speculative and self-serving, such an argument belies the defendants' concession of unconstitutionality and flies in the face of political reality. As a result, I must next address the more conventional arguments for and against severance.

## B.     Applying Conventional Legal Rules, Severance is Not Appropriate.

"The issue of severability is one of state law."  *Dakota, Minnesota & Eastern Railroad Corp. v.  South Dakota*, 362 F.3d 512, 518 (8th Cir. 2004) (citing *Leavitt v. Jane L.*, 518 U.S. 137 (1996).   Regarding the state law at issue in this case,

> the Nebraska Supreme Court has held that a portion of a statute is severable if a "workable plan" remains after severance, the valid portions are "independently enforceable," the invalid portion did not serve as "such an inducement to the valid parts that the valid parts would not have passed without the invalid part," and severance will not violate the "intent of the Legislature."

*Jones*, 470 F.3d at 1271 (citing *Jaksha v. State*, 486 N.W.2d 858, 873 (Neb. 1992)).

The Nebraska Supreme Court has also said that "amendments may be saved *only if* it appears that the unconstitutional part did not constitute an inducement to the passage of the remaining amendments." *Duggan v. Beermann*, 544 N.W.2d 68, 79-80 (Neb. 1996) (denying severance regarding a constitutional amendment) (citing *Fitzgerald v. Kuppinger*, 79 N.W.2d 547 (Neb. 1956) (denying severance regarding a statute)  (emphasis added).   Thus, if the unconstitutional part of a Nebraska law served as an inducement to passage, severance is not permitted under any circumstance.

-15-

> **1.** ***Applying the Nebraska Law of Severance, the Eighth Circuit Has Stressed Two Factors: (a) the Presence or Absence of a Severability Clause and (b) the Likelihood that the Offending Portion Induced Passage of the Entire Legislation.***

In *Jones,* the Court of Appeals held that the unconstitutional portions of a Nebraska constitutional amendment, prohibiting farming or ranching by corporations and syndicates except for family farms or ranch corporations or limited partnerships in which at least one family member was a person residing on or actively engaged in the day to day labor and management of the farm or ranch, could not be severed from the valid provisions.  In *Jones*, there was no severability clause, and there was no showing that the unconstitutional part of the amendment did not constitute an inducement to the passage of the remaining part.   The Court of Appeals found that severance was not justified in such a circumstance even though "severing the unconstitutional portion . . . leaves a workable plan that is independently enforceable." *Jones*, 470 F.3d at 1271.

In this case, the challenged law contains no severability clause.  This omission is particularly important in cases like this one where the evident intention of the law was to protect "in state" interests from "out of state" interests, and the implementation of the unobjectionable part, without the severed unconstitutional provision, may turn the law against "in state" interests.   In other words, severance could have the unintended consequence of harming the very persons or entities the law was intended to promote and protect.   The absence of a severability clause indicates that the legislature was not willing to take that risk.

Even more importantly, the unconstitutional provision was a material inducement to passage of the entire amendment.  Senator McDonald, the sole author of the amendment, explicitly told her colleagues that the "*intent* is not to affect current license holders" and she stated that the law was intended to "*preserve* the licenses of those that . . . have already obtained a license . . . ."   (Filing 33-2 at

CM/ECF pages 18-19. (Emphasis added.) If the sole sponsor's explicit "intent" was to "preserve" the interests of current license holders, it would be strange indeed to view the "Grandfather Clause," which protects those license holders, as an appendage that can be freely amputated without doing violence to the will of the legislature.

As in *Jones*, I am confronted with a law favoring Nebraskans that lacks a severability clause. As in *Jones*, I am also confronted with a law where the unconstitutional provision favoring Nebraskans unquestionably provided a material inducement to the passage of the entirety of the legislation. As in *Jones*, it is proper to strike the balance against severance.

While the foregoing ends the matter, I next address the two main arguments advanced by the defendants regarding the severance issue. I explain why neither one is persuasive.

> ### 2. Under the Nebraska Law of Severance, the Job of the Court is Not to "Strengthen" the Law But to Implement the Intent of the Legislature.

The defendants assert that I should sever the "Grandfather Clause" to "strengthen" Nebraska law. Admitting the pernicious nature of the "Grandfather Clause," the defendants state:

> [I]n the present case, the Grandfather Clause is actually contrary to the legislative purpose of Neb. Rev. Stat. § 53-169.01, in that it purports to allow deterioration of Nebraska's three-tiered liquor industry system by "grandfathering" in prohibited wholesaler/manufacturer relationships that existed prior to January 1, 2007. Not only does a "workable plan" remain with the removal of the Grandfather Clause from § 53-169.01, but removal actually strengthens Nebraska's three-tiered liquor industry system.

(Filing 32 at CM/ECF page 9.)

-17-

Respectfully, this argument completely misunderstands the purpose of the law of severance. It is not a judge's job to make Nebraska law "stronger" when considering whether to sever. *See*, *e.g.*, *Duggan*, 544 N.W.2d at 79 ("The severability analysis has not been used to revise careless drafting or to correct clerical errors.") On the contrary, the judge's job is to determine whether the unconstitutional portion of the law induced the legislature to act. When doing so, the judge does not determine what will make the law better, but rather the judge examines "the character and quality of the action of the Legislature as it appears in the legislation under scrutiny." *Fitzgerald*, 79 N.W.2d at 553.

While these executive branch defendants–the Governor, the Attorney General, the Liquor Commission and the Commissioners–may prefer a law that gives no parochial protection to Nebraska interests, that was quite plainly not the intention of Senator McDonald and her legislative colleagues. I, therefore, respectfully reject the defendants' invitation to "strengthen" Nebraska law by use of the "severance" mechanism. If Nebraska law is be "strengthened," the Nebraska legislature must do so.

### 3. Given the Market Complexities of This Regulated Industry, Whether A Workable Statutory Scheme Remains is Unknowable.

The defendants seem to argue that even if the offending provision was an inducement to the passage of the law, the law may still be saved if it works without including the bad part. This argument is apparently based upon a parsing of the *Duggan* case that dealt with an initiative to amend the state constitution. *See* Duggan, 544 N.W.2d at 79-80 (denying severance of a constitutional amendment) (citing *Fitzgerald*, 79 N.W.2d 547 (denying severance of a statute)). Given that the *Fitzgerald* case, the only case cited by *Duggan* on this point, dealt with a statute, and not an amendment to the constitution, the defendants underestimate the force of an "inducement" conclusion when a statute is at issue. Thus, following the strong and

-18-

unambiguous language in *Duggan*, if the offending portion of a statute induced passage of the legislation, then the inquiry ends and severance is not permitted. *Duggan,* 544 N.W.2d at 79-80 (the "amendments may be saved *only if* it appears that the unconstitutional part did not constitute an inducement to the passage of the remaining amendments.") (Emphasis added).

However, even if I am wrong, the predicate for the defendants' assertion–the law is workable when severed–cannot be accepted.   Simply put, it is based upon an "after the fact" *legal conclusion* made by a representative of a party to this litigation–the Executive Director of the Commission.   For two reasons, I will not rely upon that legal conclusion.

First, it is not obvious that the Executive Director's conclusion is correct. Indeed, I fail to see why a wholesaler who is an "agent of a manufacturer" may not be controlled by the "manufacturer" in the same way that a "subsidiary" of a "manufacturer" who is a wholesaler may be controlled.   After all, the vertical integration prohibitions found in Neb. Rev. Stat. § 53-169.01 ban "direct and indirect" "interests" in the  ". . . conduct, operation, or management of any alcoholic liquor wholesaler" and they do not focus solely on ownership interests.   So long as the relationship between a manufacturer and a wholesaler involves "an interest of a financial or business nature," the Nebraska Supreme Court has said that the "scope of the interest forbidden [by Neb. Rev. Stat. § 53-169.01] is wide . . . ." *Nebraska Liquor Distributors, Inc. v. Nebraska Liquor Control Commission*, 693 N.W.2d 539, 547 (Neb. 2005).   If the law as amended and severed were applied to all wholesalers, including those linked to manufacturers by agency or other similar relationships, then "grandfathered" Nebraska wholesalers–comprising 90% percent of the market–may be driven out of business unless they terminate their relationships with manufacturers.[15]  Would that be workable?  I have no idea.

_____

[15]Consider, for example, Finocchiaro's relationship with Gallo Wines.

Second, it is simply not the law that the *legal opinion* of a party to pending litigation must be accepted as binding on the judge regarding questions of "workability" and "severability."  More specifically, given the market complexities of this regulated industry,[16] whether or not the remaining portions of the law would work effectively is a matter that can only be determined if severance took place and then the Commission and the courts of Nebraska had occasion to deal with the "fall out" in an actual case and controversy involving the "grandfathered" parties.

Consequently, the answer to the question of whether the statute would work if severed is unknowable.  In my opinion, Nebraska's severance rules do not require or permit me to guess and I will not do so.

C.    **The Governor and the Attorney General Are Proper Parties for Purposes of Injunctive Relief.**

To the extent that the defendants argue that I must dismiss the Governor and the Attorney General because they have no real connection to enforcement of the challenged law, I reject that argument because it is not supported by Eighth Circuit precedent. *See*, *e.g.*, *Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006) (citing the broad powers of the Nebraska Governor and the Nebraska Attorney General to "enforce the State's Constitution and statutes," and concluding that the Governor and the Attorney General have "'some connection with the enforcement' [of the law] and therefore this suit for equitable relief falls within the exception to the State's Eleventh Amendment immunity established in *Ex parte Young*, 209 U.S. 123, 157 (1908).").

---

[16]If one doubts this complexity, please listen to the digital audio recording of the Executive Director explaining the market and the regulatory milieu at the hearing on the motion for the temporary restraining order.

-20-

**D.     It is Unnecessary and Inadvisable to Resolve Plaintiffs' Other Claims or Defendants' Defenses to Those Other Claims.**

The plaintiffs raise other challenges and the defendants assert defenses to those other claims.  Having reached a decision that will entirely resolve this case, I believe that it is both unnecessary and inadvisable to address the other claims or the defenses related to those other claims.  *See*, *e.g.*, *Cellco Partnership v. Hatch*, 431 F.3d 1077, 1084-85 (8th Cir. 2005) (directing entry of permanent injunction, holding one portion of a state statute invalid as a result of federal preemption, refusing severance, and refusing to address whether other portions of the statute were unconstitutionally vague) (citing *Planned Parenthood v. Wasden*, 376 F.3d 908, 937 (9th Cir. 2004)), *cert. denied*, 127 S.Ct. 433 (2006).  I shall simply dismiss the plaintiffs' other claims without prejudice.

Accordingly,

IT IS ORDERED that:

1.     The plaintiffs' motion for partial summary judgment (filing 40) is granted.  The defendants' motion for partial summary judgment (filing 31) is denied.

2.     The plaintiffs' motion to strike (filing 39) is denied.  The defendants' motion to strike (filing 52) is denied.

3.     Contemporaneous with the entry of this memorandum and order, a separate judgment will be entered providing in material part as follows:

   A.     The Court declares that Neb. Rev. Stat. § 53-169.01 as amended by LB 578 (2007) is unconstitutional because that portion of the amendment containing a "Grandfather

-21-

Clause" violates the Equal Protection Clause and the Privileges and Immunities Clause of the United States Constitution. The Court declares that the "Grandfather Clause" was enacted with a discriminatory purpose and the "Grandfather Clause" has a discriminatory effect. The Court declares that the "Grandfather Clause" cannot be severed from the remainder of the amendment.

B.   The defendants and their agents, servants and employees are permanently enjoined from enforcement of Neb. Rev. Stat. § 53-169.01 as amended by LB 578 (2007).

C.   All other claims of the plaintiffs not addressed in paragraph A are dismissed without prejudice.

D.   Taxable costs shall be assessed against the defendants.

4.   If the plaintiffs believe they are entitled to attorney fees, they shall file their motion and supporting papers within 14 days of this date pursuant to Federal Rule of Civil Procedure 54(d)(2) and NECivR 54.3 and 54.4. If a timely motion for attorney fees is filed before the filing of a notice of appeal, the motion will have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59. *See* Fed. R. Civ. P. 58(e). The defendants shall have 14 days thereafter to respond.

February 14, 2008.                    BY THE COURT:

                                      *s/Richard G. Kopf*
                                      United States District Judge

-22-